**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALONZO BEEPOT and
JOANNE BEEPOT,

        Plaintiffs,

vs.                            CASE NO. 3:10-cv-423-J-34TEM

J.P. MORGAN CHASE NATIONAL
CORPORATE SERVICES, INC.,

        Defendant.
_____

## <u>REPORT AND RECOMMENDATION[1]</u>

      This case has been referred to the undersigned for consideration and issuance of a Report and Recommendation regarding the Defendant's motions seeking dismissal of the action from federal court (*see* Doc. #20, Order of Referral).  As will be discussed in more detail *infra*, there is an ongoing, parallel state court proceeding between these same Plaintiffs and Defendant.

      After a thorough review of the record in this case, the argument of the parties as raised in the relevant filings and made during the course of two hearings held before the undersigned, the applicable statutes and the pertinent case law, the undersigned finds this action should be dismissed without prejudice to the Plaintiffs seeking relief in the underlying state court foreclosure case, through the filing of compulsory counterclaims as  discussed herein.

_____

[1]Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

There are a number of motions and responses that touch upon the Court's request for a Report and Recommendation.  In an effort to avoid confusion, the Court will refer to the relevant documents as follows:

1.　　J.P. Morgan Chase National Corporate Services, Inc.'s Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement and Memorandum of Law (Doc. #11) as the "Motion to Dismiss;"

2.　　Plaintiff's [sic] Motion in Opposition to Defendant J.P. Morgan Chase National Corporate Services, Inc., Motion to Dismiss, or in the Alternative, Motion for a More [Definite] Statement and Memorandum of Law (Doc. #12) as the "Beepots' Initial Response;"

3.　　J.P. Morgan Chase National Corporate Services, Inc.'s Motion to Supplement to and /or Motion to Amend Defendant's Motion to Dismiss, and Supporting Memorandum of Law (Doc. #13) as the "Amended Motion to Dismiss;"

4.　　Plaintiff's [sic] Motion in Opposition to Defendant's Motion to Supplement to and/or Motion to Amend Defendant's Motion to Dismiss, and Supporting Memorandum of Law (Doc. #14) as the "Beepots' Memorandum;"

5.　　Plaintiff's [sic] Motion in Opposition to Defendant's Motion to Supplement to and/or Motion to Amend Defendant's Motion to Dismiss, and Supporting Memorandum of Law (Doc. #24) as the "Beepots' Second Memorandum;" and,

6.　　Plaintiff's [sic] Memorandum of Law Requesting a 56(a) Motion for Summary Judgment (Doc. #28) as the "Beepots' Summary Judgment Memorandum."

**I.　　Background and Procedural History**

2

This dispute concerns a mortgage currently held by Defendant Chase against the Beepots' residence.[2]   According to the allegations contained in the pleadings and filings before the Court, the Beepots are homeowners residing in the house located at 2420 Daniels Landing, City of Orange Park, Clay County, Florida.  The Beepots purchased this home by way of a mortgage in the amount of $760,000, that was executed on August 17, 2007, and is secured by the above mentioned house.[3]   Amended Complaint ¶ 10.  The mortgage lender was Washington Mutual Bank, FA, which subsequently was acquired by Chase.[4]   Amended Complaint ¶ 2; Motion to Dismiss at 1.

On February 24, 2009, Chase filed a foreclosure action against the Beepots in the Fourth Judicial Circuit in Clay County, Florida.[5]   On April 30, 2009, Chase filed a Motion for

---

[2]Due to the fact the same parties in this federal case are also litigating the mortgage foreclosure action in state court, in which the roles of the parties are reversed, this Report and Recommendation will refer to the parties by name to avoid confusion.  Thus, hereafter, the Court will refer to Defendant J.P. Morgan Chase National Corporate Services, Inc., as "Chase."  Similarly, the Court will refer to Plaintiffs Alonzo Beepot and Joanne Beepot collectively as "the Beepots."

[3]The Court notes there is some question as to the nature of the mortgage against the Beepots' residence.  *See* Beepots' Summary Judgment Memorandum at 1 (indicating the Beepots "refinanced" their home).  While this issue is not determinative of the recommendation made by the undersigned, the issue will be discussed further in the Standard of Review and Analysis section of this Report and Recommendation.

[4]Chase "appears as the purchaser of loans and other assets of Washington Mutual Bank, FA ('Washington Mutual') from the Federal Deposit Insurance Corporation."  *Hernandez v. California Reconveyance Co.*, No. 09cv1960 JM(BLM), 2010 WL 1911244, *1 (S.D. Cal. May 10, 2010).  Chase presents itself in this action as "acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as Receiver."  Motion to Dismiss at 1.

[5]As noted during the May 24 hearing, the state case is J.P. Morgan Chase Bank, Nat'l Ass'n v. Alonzo D. Beepot, et al., Case No. 2009-CA-000528 (Fla. 4th Cir. Ct. filed Feb. 24, 2009).

Summary Judgment in that case, which the state court granted on June 2, 2009 (*see* Doc. #13-1).   After summary judgment was entered, the Beepots—who appear to have proceeded *pro se* up to that point—retained their current attorney, who filed a Motion for Relief from Summary Judgment on March 19, 2010 (*see* Doc. #13-2, Motion for Relief).

The state Motion for Relief raised arguments to set aside the summary judgment that are substantially the same as the claims raised in the operative complaint in this federal litigation.   More specifically, in state court the Beepots asserted Chase failed to provide them "with all applicable Truth in Lending disclosure statements, failed to provide ... copies of the rights of re[scission], ... statements of the maximum monthly payments, ...[and] correct HUD-1 statements." *See* Motion for Relief at ¶2.[6]   Also similar to the Amended Complaint, the Motion for Relief raised the arguments that Chase failed to provide proper "notice as a 'servicer' under the Real Estate Settlement Procedures Act, 26 U.S.C. § 2605(b)," "breached the fiduciary duty" owed the Beepots, "breached an implied contractual covenant of good faith and fair dealing" with the Beepots, "violated 15 U.S.C. § 1635(b) [and] ... 15 U.S.C. § 1635(a)," which are TILA provisions, and violated "15 U.S.C. § 1639(a)(1)(A), (a)(1)(B), and (a)(2)(B) by failing to purposely disclose certain statements to [the Beepots] within three (3) business days required prior to consummation of the mortgage in violation of 15 U.S.C. § 1639(b)(1)." *Compare generally*, Amended Complaint (Doc. #6) *with* Motion for Relief (copy found at Doc. #13-2).

In state court, upon the failure of Chase's attorney to appear at the hearing on the

---

[6]Throughout this Report and Recommendation, the acronyms for the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act ("FDCPA") may be used.

Motion for Relief, the Beepots' Motion for Relief was granted and the summary judgment was set aside on September 27, 2010 (*see* Doc. #13-3, Order on Defendants' Motion for Relief of [Judgment] Entered on June 2, 2009 and Defendants['] Motion for Continuance).[7]

During the interim, after the Beepots filed the Motion for Relief, but before the state court issued its ruling, the instant action was filed in federal court on May 17, 2010.  The Court dismissed the Beepot's initial complaint *sua sponte,* finding the complaint was an impermissible "shotgun pleading" (*see* Doc. #5, Court Order).  The Beepot's filed the Amended Complaint on June 2, 2010, to which Chase responded by filing the Motion to Dismiss.  The Amended Complaint alleges eight counts:  (1) a claim for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226.23(b), which include allegations that Chase is liable for failing to make appropriate disclosures under TILA at the time the loan was made or within one year of the closing date; (2) a claim for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and Regulation X, 24 C.F.R. § 3500.1 *et seq.,* which include allegations that Chase is liable for failure to provide notices at the time the loan was "transferred or hypothecated;" (3) a claim for violations of the Fair Debt Collection [Practices] Act, 15 U.S.C. § 1692 *et seq.,* including allegations Chase failed to cease communications with the Beepots in an effort to collect on "the debt";[8] (4) a claim for Chase's breach of fiduciary duty "by fraudulently inducing [the Beepots] to enter into a mortgage transaction which was contrary to the [Beepots] stated

---

[7]As stated during the May 24 hearing, Chase reportedly retained new counsel, and on October 7, 2010, its new attorneys moved for a rehearing on the matter, which was granted.  The state action remains pending as of the date of this writing.

[8]Count III of the Amended Complaint does not identify "the debt" on which collection efforts were made.

intentions,... interest ..., and contrary to the [Beepots] preservation of their home;" (5) a claim for Chase's breach of contract, breach of good faith dealings, and infliction of injury; (6) a claim for breach of the implied covenant of good faith and fair dealings by Chase's "attempt to foreclose upon property lawfully belonging to [the Beepots] without production of documents demonstrating the lawful rights for said foreclosure;" (7) a claim to quiet title to the real property located at 2420 Daniels Landing, City of Orange Park, Clay County, Florida; and, (8) a claim for declaratory relief stating that "a declaration of rights and duties of the parties herein by the Court is essential to determine the actual status and validity of the mortgage loan transaction and any rights, duties and/or obligations as to the enforcement of it." *See generally*, Amended Complaint.

In consideration of this matter, two hearings have been held before the undersigned.[9]   During the first hearing, held on May 24, 2011, the Court found the argument of Chase to amend or supplement its initial Motion to Dismiss was persuasive and well founded.  The Court granted Chase's motion seeking to amend or supplement the motion to dismiss, which herein is identified as the Amended Motion to Dismiss, and advised Beepots' counsel he would be permitted to file a supplemental legal brief arguing the Beepots' opposition to the Amended Motion to Dismiss (*see* Doc. #23, Clerk's Minutes). The Beepots' Second Memorandum was filed on June 6, 2011.  On the same date as the May 24 hearing, but later in the day, a notice of mediation was filed indicating the parties'

---

[9]The transcript of the May 24, 2011 hearing is found in the record at Docket Entry 30 and is incorporated by reference.  The non-transcribed recording of the July 20 hearing is hereby incorporated by reference.  The parties may contact the Courtroom Deputy of the undersigned if a transcript of either hearing is desired.  (*See* Docs. #23, #27, Clerk's Minutes.)

agreement to mediate this case for attempted resolution on July 14, 2011 (*see* Doc. #22).

On the afternoon of July 14, the mediator advised the Court the case had not resolved (*see* Doc. #25).  On July 20, the Court held a telephonic hearing to advise counsel for the parties that the undersigned was strongly considering possible conversion of the Amended Motion to Dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.  Under Rule 12(d), the Court may view the motion to dismiss as a motion for summary judgment if the parties present extrinsic materials and the Court elects not to exclude them from its consideration of a Rule 12(b)(6) motion to dismiss. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (*referring to* Fed. R. Civ. P. 12(d)).  Here, the Court permitted the parties to submit any additional materials relevant to the Amended Motion to Dismiss.[10]

## II.   STANDARD OF REVIEW AND ANALYSIS

Upon review of Chase's Amended Motion to Dismiss, the Court believed the effect of Chase's state court action against the Beepots might warrant consideration of materials outside of the pleadings in this case.  However, upon further review the undersigned has determined the matter can be resolved without resorting to any evidence other than those documents attached to the relevant filings.  Thus, the Court will consider Chase's request to dismiss this action under the Rule 12(b)(6) standard. The undersigned finds the

---

[10]To date, the Beepots filed Plaintiff's [sic] Memorandum of Law Requesting a 56(a) Motion for Summary Judgment (Doc. #28) on July 27, 2011 and Chase has not filed further materials.  The undersigned issues this Report and Recommendation without awaiting the additional time for Chase to file further materials pertinent to the motions to dismiss because additional materials would not effect the recommendations stated herein.

documents attached to the various filings related to the motions to dismiss are central to the Beepots' claims and have contents that are undisputed between the parties.  When ruling on a motion to dismiss, "the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *Speaker*, 623 F.3d at 1379-80 (internal citation omitted).

Because the undersigned finds that this matter can be resolved on the issue presented by Chase in its Amended Motion to Dismiss, it is unnecessary to reach the alternative arguments Chase raised in the initial Motion to Dismiss.[11]   Accordingly, this Report and Recommendation focuses on Chase's assertion that the claims made by the Beepots in this federal case should be brought as compulsory counterclaims in the underlying state court action and the Beepots' arguments against that assertion.  *See* Amended Motion to Dismiss at 3-6; Beepots' Second Memorandum at 2-6.

## A.  Standard of Review

The pleading requirements of the Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The complaint "must give the defendant fair notice of what the claim is and the

---

[11]The initial Motion to Dismiss (Doc. #11) raises allegations of pleading insufficiencies.  A review of that motion and the Beepots' Initial Response (Doc. #12) convinces the undersigned that there is some merit to the asserted deficiencies in the Amended Complaint. In general, Chase maintains the Beepots have "failed to re-allege the basic information for each count as to parties and other necessary facts."  Motion to Dismiss at 2.  As noted *supra*, n.8, when first reading the Amended Complaint, the Court particularly was struck by the lack of identification of the "debt" on which Chase allegedly tried to collect from the Beepots in violation of the provisions of the Fair Debt Collection Practices Act.  *See* Amended Complaint, Count III.  Presumably, the "debt" was the mortgage against the Beepots' home, but this basic information is absent from the statement of the claim for a FDCPA violation and it is conceivable Chase may have attempted to collect on a different consumer debt.

grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  Case law has established that the complaint must state plausible claims established by factual allegations sufficient "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556; *see also, Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d at 1380.   A complaint will have "facial plausibility" when a plaintiff pleads factual content sufficient for the reviewing court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Speake*r, 623 F.3d at 1380 (citing to *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

The reviewing court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Speaker*, 623 F.3d at 1379. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (internal citation omitted).

## B.  Chase's Amended Motion to Dismiss

In the Amended Motion to Dismiss, Chase argues the claims that the Beepots have brought in this case are compulsory counterclaims in the ongoing state action and the Court should dismiss this case, which was filed well after the state foreclosure litigation had commenced.  Chase maintains this argument is particularly true in light of the set aside of the summary judgment in state court, which thereby permits the Beepots to raise the counterclaims within that case.  *See* Amended Motion to Dismiss at 3 ("The Circuit Court's grant of relief to the Beepots now permits them to litigate the very issues they have sued for in this action in the Circuit Court [a]ction.").

9

The Beepots argue the federal case is separate and distinct from the foreclosure litigation.  More specifically, the Beepots assert the claims in the federal case "relate solely to the making of the loan," whereas the state court action was commenced for the Beepots failure "to make mortgage payments, in which the obligation to making the loan payments was in dispute."  Beepots' Memorandum at 3; *see also*, Beepots' Second Memorandum at 2 ("The Beepots' claims are based on the TILA violations, and thus are based on the actual issuance of the mortgage without the required disclosures.  The basis of this claim is wholly different than that of the Circuit Court claim.").  For support of their position, the Beepots point to the case of *In re Tomasevic*, 275 B.R. 86, 101 (Bankr. M.D. Fla. 2001).

The Beepots state *In re Tomasevic* stands for the proposition that claims in a state foreclosure action pertain to the obligatory payments under the loan, which are not the same as TILA claims raised in a federal case, and thus Chase's argument fails the logical relationship test established in the Eleventh Circuit for determining whether a counterclaim would be compulsory.[12]  *See* Beepots' Second Memorandum at 3.  A close reading of *In re Tomasevic*, however, reveals the Beepots have misstated the court's rulings.  *In re Tomasevic* involved a Chapter 13 bankruptcy, in which the debtor sought to raise violations of Sections 121 and 125(a) of the Truth in Lending Act, 15 U.S.C. §§ 1631 and 1635(a) as set-off claims in the bankruptcy proceeding.  *In re Tomasevic*, 275 B.R. at 95.   After the

---

[12]"Under this test, there is a logical relationship when the 'same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1435, 1455 (11th Cir. 1985) (citing to *Plant v. Blazer Financial Servs. Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979); *see also Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380-81 (11th Cir. 1991) (discussing compulsory counterclaims and noting Florida has accepted the same definition of the logical relationship test as is applied within the Eleventh Circuit).

state trial on the foreclosure of the debtor's homestead, judgment was entered in favor of the bank in early August 1999 and a foreclosure sale of the home was scheduled.  *Id.* at 91-92.  Approximately one month later, the debtor filed the petition for bankruptcy to reorganize his debts and stay the foreclosure sale.  *Id.*  The court found the debtor's Section 121 claim, which pertained to full and meaningful disclosure of the terms of the loan, was barred because the debtor raised the claim in the foreclosure action and *res judicata* applied to this issue.  *See id.* at 100.[13]  Importantly, for purposes of the case before this Court, the *Tomasevic* court found the debtor's claim under this section of the TILA was "clearly a compulsory counterclaim to the bank's claim for principal, interest, escrow advances, and late fees at issue and decided in the foreclosure action."  *Id.*  The court also found the debtor's Section 125 claim, which pertained to adequate notice of the right to rescind a transaction and which went to the "making of the loan, rather than a dispute as to the obligations under the loan," did not apply because "Section 125(e)(1) of the Truth in Lending Act, 15 U.S.C. § 1635(e)(1) ... specifically exempts a residential mortgage transaction. . . ."  *Id.* at 101-02.[14]

In the federal case before this Court, the Beepots allege in the operative complaint that in August 2007 they "purchased" the real property, in which they reside.  Amended

---

[13]In fact, the *Tomasevic* court also found, "*Res judicata* bars not only questions actually decided, but also all grounds for recovery and defenses *which might have been presented* in the prior litigation between the parties."  *In re Tomasevic*, 275 B.R. at 100 (emphasis added) (internal citation omitted).

[14]A residential mortgage transaction "means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling *to finance the acquisition or initial construction* of such dwelling."  15 U.S.C. § 1602(w) (emphasis added).

Complaint ¶¶ 9-10. Thus, the Court would find the transaction at issue was a residential mortgage transaction not subject to the right to rescind under the TILA, *see In re Tomasevic*, 275 B.R. at 102-03, were it not for the Beepots' new argument that this was a refinanced mortgage transaction, *see generally*, Beepots' Summary Judgment Memorandum.

The Court notes the Beepots have created a question of material fact regarding the nature of the loan, and thus the mortgage and the Beepots' rights arising out of that mortgage. More specifically, the Beepots assert, "On or about August 17, 2007, Plaintiffs Alonzo Beepot and Joanne Beepot purchased certain real property commonly known as 2420 Daniels Landing Drive, Orange Park, Clay County, and State of Florida." Amended Complaint ¶10. Confusingly, the Beepots claim for the first time in their Summary Judgment Memorandum, "In July 2007[,] Mrs. Beepot set out to refinance the mortgage she and her husband held on their home located at 2420 Daniels Landing, Orange Park, Florida." *See* Beepots' Summary Judgment Memorandum at 2. Significantly, a "residential mortgage transaction" is not subject to the rights of rescission set forth in the TILA, 15 U.S.C. § 1635, as a refinanced mortgage *possibly would be*. *See* 15 U.S.C. § 1635(a), (e); *see also In re Porter*, 961 F.2d 1066 (3rd Cir. 1992) (discussing TILA rescission rights in refinancing a mortgage for "new money" versus "old money"); *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276 (D. Nev. 2010) (finding plaintiffs who obtained their loan to finance the purchase of the same residence that was used as collateral had no right to rescind the mortgage under the TILA).

Nonetheless, in light of the discussion, *infra*, the undersigned finds this case is subject to dismissal without prejudice to the Beepots seeking relief in the state foreclosure

action, irrespective of the precise nature of the mortgage transaction in dispute. *See Carson v. Wells Fargo Bank, N.A.*, No. 8:10-CV-2362-T17-EAJ, 2011 WL 2470099 (M.D. Fla. Jun. 20, 2011) (granting the defendant's motion to dismiss or stay the federal case for alleged TILA and civil rights violations, where a state foreclosure action involving the same parties was filed two years earlier and the *Colorado River* factors favored dismissal); *Petillo v. World Savings Bank, FSB*, No. 6:08-cv-1255-Orl-19GJK, 2009 WL 2178953 (M.D. Fla. Jul. 21, 2009) (dismissing the federal case without prejudice to seeking relief in an earlier filed state court action, because the alleged federal claims for TILA violations, negligence and other causes of action under the court's ancillary jurisdiction, were compulsory counterclaims under Florida law).[15]

## B.  Colorado River Analysis

As a general matter, federal courts have an "unflagging obligation" to exercise the jurisdiction given them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (internal citation omitted).  That obligation, however, is not without its discretion. *See id.; also see Johnson & Johnson Vision Care, Inc. v. Kenneth Crosby New York, LLC*, No. 3:09-cv-874-J-34MCR, 2010 WL 1030121 (M.D. Fla. Mar. 17, 2010) (exercising the court's discretion under the *Colorado River* analysis  to stay a federal action during the pendency of a parallel state case).  Although, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having

---

[15]Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

jurisdiction," exceptional circumstances may suggest the "wise judicial administration" of the federal court with concurrent jurisdiction dismiss its suit. *Colo. River*, 424 U.S. at 817-18 (internal citations omitted).

In *Colorado River*, the Supreme Court promulgated a set of factors for district courts to consider when deciding to refrain from exercising federal jurisdiction, which the Court modified in a subsequent holding.[16]  The Eleventh Circuit has summarized the factors by stating:

> the Colorado River doctrine requires federal courts to consider six factors in determining whether abstention in favor of a concurrent state proceeding is appropriate:   (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Transouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir. 1998) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16-26 (1983)).  The Court emphasized that "these criteria could not be applied according to a rigid formula; no one factor is dispositive."  *Id.*  at 1295 (citing *Moses H. Cone*, 460 U.S. at 16).  "However, a federal court considering abstention must weigh these factors with a heavy bias in favor of exercising jurisdiction."  *Id.*

For a court to properly consider a case under *Colorado River*, there must be a state action and a federal action that are found to be parallel to each other.  *See Ambrosia Coal and Construction Co. v. Morales*, 368 F.3d 1320, 1329-30 (11th Cir. 2004).  The law does

---

[16]*See Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983) (modifying the Courts *Colorado River* analysis).

not require that the exact same issues or the exact same parties be involved in the two cases. *Id.* The Eleventh Circuit has found that for the *Colorado River* doctrine to apply the threshold to be met is that the "proceedings [must] involve substantially the same parties and substantially the same issues." *Id.* at 1330. In this instance the threshold is met.

As previously mentioned, a majority of the claims raised in the federal action were argued as grounds to set aside the summary judgment in the state court foreclosure action. Thus, the issues raised in the federal case are substantially the same as those raised in the state case, albeit the issues are brought as claims here and as defenses against summary judgment in the state case. *Compare generally*, Amended Complaint (Doc. #6) *with* Motion for Relief (copy found at Doc. #13-2). Both litigations involve precisely the same parties. Therefore, the undersigned finds it is proper to consider possible dismissal of this case in light of the *Colorado River* doctrine.

To begin, the first factor of the *Colorado River* balancing test considers the order in which the courts assumed jurisdiction over the property. *See Transouth*, 149 F.3d at 1294. This factor weighs in favor of dismissal or stay of the federal case. Here, the parallel state court case was initiated February 2009, nearly a year and three months prior to the filing of the federal action on May 17, 2010. *See* Amended Motion to Dismiss at 2. The state court action is a foreclosure case, which is an *in rem* proceeding over which the state court has assumed jurisdiction over the property itself. *See, e.g., Carson v. Wells Fargo Bank, N.A.*, 2011 WL 2470099 at *5-6. "In such *in rem* proceedings, the court that controls the 'property has exclusive jurisdiction to proceed.'" *Id.* at *6 (quoting *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)). In this federal case there is no jurisdiction over the *res*.

The second *Colorado River* factor examines the "relative inconvenience of the

15

fora." *Transouth*, 149 F.3d at 1295.  From a purely logistical standpoint, this factor would seem to weigh slightly in favor of dismissal because as a matter of practicality it is more convenient to litigate in one court than in two courts.  However, under the *Colorado River* analysis, application of this prong does not weigh heavily either for or against continuation of the federal litigation.  Both courts sit within the State of Florida; both courts are geographically convenient to the parties and their likely witnesses.

The third factor to consider in a *Colorado River* analysis is the order in which jurisdiction was obtained and the relative progress of the two actions.  *Transouth*, 149 F.3d at 1295.  As the Supreme Court emphasized in *Moses H. Cone*, this prong "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  When viewing the case from the standpoint of the progress made, this factor weighs in favor of dismissal or stay of the federal case.  An answer to the Amended Complaint has yet to be filed in the federal action, in which the parties currently are engaged in initial motion practice.  Conversely, the state court entertained motion practice, has entered and has set aside a summary judgment.  Thus, the progress of the state court action is  more extensive than the progress in the instant action. The undersigned finds this factor weighs in favor of dismissal.  *See Colorado River*, 424 U.S. 820.

The fourth factor, which is the avoidance of piecemeal litigation, weighs heavily in favor of dismissing the instant action.  *See Transouth*, 149 F.3d at 1295.  In the Beepot's Amended Complaint they seek declaratory relief from this Court as to the parties respective rights under the mortgage.  Amended Complaint at Count VIII.  Other courts have dismissed declaratory judgment actions in deference to state court foreclosure proceedings

16

when the mortgage foreclosure involved the same matter and the same parties as the contemporaneous declaratory judgment case and the state case had progressed further than the federal case.  *See, e.g.,  Heritage Land Co. v. FDIC*, 572 F. Supp. 1265 (W.D. Okla. 1983).  In essence, the Beepots are asking this Court to determine what the parties' respective rights are in the state case.  This is textbook piecemeal litigation because in seeking such declaratory relief the Beepots are using this action either as a defense to the state court foreclosure action or as an attempt to direct the outcome of the state case.[17]  As such there is a substantial risk of inconsistent rulings and consequentially piecemeal litigation.  *See Carson v. Wells Fargo Bank, N.A.*, 2011 WL 2470099 at *6 (quoting *American Inter. Underwriters, Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir. 1988) ("[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and reaching different results")).

The fifth and six factors of the *Colorado River* analysis consider whether federal law provides the rule of decision, and  whether the state court will adequately protect the rights of all parties.  *See Transouth*, 149 F.3d at 1295.  As these two factors are closely related, the Court will analyze them together.  The fifth factor would seem to weigh in favor of exercising federal jurisdiction since three of the claims raised by the Beepots (the TILA claim, the RESPA claim, and the FDCPA claim) arise under federal statutes.  However, the mere fact that federal law provides the rule of decision on three of the eight claims raised

---

[17]*Also see* Amended Complaint at Count VII to Quiet Title.  Similar to the claim for declaratory relief, if the Court were to rule on this matter the resulting ruling would essentially divest the state court of its authority over the property.  Black's Law Dictionary defines an action to quiet title as "a proceeding to establish a plaintiff's title to land by compelling the adverse claimant to establish a claim or be forever estopped from asserting it." *Black's Law Dictionary* 30 (7th ed. 1999).

in the Amended Complaint does not mean this case should proceed in federal court.  Just as the federal court has pendent, or ancillary, jurisdiction to hear state claims when federal jurisdiction exists over other claims, so may the state courts consider federal questions in the context of traditional state litigation.  For example, the TILA claims raised by the Beepots are commonly raised in foreclosure actions in state court as affirmative defenses to the foreclosures.  *See Beach v. Great Western Bank*, 670 So. 2d 986 (Fla. 4th DCA 1996) (discussing the use of TILA rescission as a defense to foreclosure).  RESPA claims are also raised in state court as a matter of course in many foreclosure cases as affirmative defenses, and, as with TILA, the state courts have not seemed particularly perplexed by the proper application of this statute either.  *See Alejandre v. Deutsche Bank Trust Co. Americas f/k/a Bankers Trust Co.,* 44 So. 3d 1288 (Fla. 4th DCA 2010) (showing a case in which a defendant raised TILA and RESPA claims as affirmative defenses, and the state court entertained the defenses).  And, as will be discussed further below, these types of claims often should be brought as compulsory counterclaims in state court actions.  *See, e.g.*, *Petillo*, 2009 WL 2178953.  Thus,  the sixth factor weighs heavily in favor of dismissal this case in deference to state court action, in which the rights of all the parties can more than adequately be protected.

On the basis of the above analysis, this Court finds there are "exceptional circumstances" that warrant dismissal of the present action without prejudice to the Beepots seeking relief in their ongoing state foreclosure case.

## C.  Compulsory Counterclaims

Florida law provides, and the Eleventh Circuit has acknowledged, that the "failure to bring a compulsory counterclaim in a state court proceeding bars a subsequent suit in

federal court on that claim." *Petillo*, 2009 WL 2178953 at *4 (citing *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380-82 (11th Cir. 1991).   Here, Chase argues the claims set forth in the Amended Complaint are compulsory counterclaims to the ongoing state foreclosure action against the Beepots.   *See generally*, Amended Motion to Dismiss.   This argument is particularly persuasive in light of the recent ruling of our sister court in Tampa, which dismissed a factually similar case upon finding the TILA claims brought in the federal case were compulsory counterclaims in the state foreclosure action and the quiet title claim was necessarily dismissed with the other claims.   *See Carson*, 2011 WL 2470099 at *1-*5.[18]   In *Carson*, it is unclear whether the disputed mortgage arose out of a transaction to purchase or construct the principal dwelling, but the court nevertheless determined there was no reason why the state court could not adequately handle the TILA claims.   *Id.* at *6. Upon review and consideration of the applicable law and the record of this case, the undersigned agrees the Beepots' federal causes of action fall within the ambit of Florida's compulsory counterclaims.

A compulsory counterclaim "is a defendant's cause of action arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim." *Montgomery Ward Dev. Corp.*, 932 F.2d at 1380-81 (internal quotations and citations omitted). The Florida Rules of Civil Procedure adopt the relevant rule from Federal Rule of Civil Procedure 13(a)(1) and state:

> A pleading shall state as a counterclaim any claim which at the

---

[18]While dismissing the federal action without prejudice, the *Carson* court additionally entered the alternate ruling that should the plaintiffs effectively amend their complaint, the federal action would be stayed pending resolution of the state court case.   *See Carson*, 2011 WL 2470099 at *5-7.   *See* discussion, *infra*, Section D.

> time of serving of the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Fla. R. Civ. P. 1.170(a). "The Florida Supreme Court adopted a logical relationship test  to determine whether a counterclaim is compulsory under Rule 1.170(a)." *Petillo*, 2009 WL 2178953 at *4 (citing *Londono v. Turkey Creek, Inc.,* 609 So. 2d 14, 20 (Fla. 1992).[19]  The *Londono* court provided the following explanation of the logical relationship test:

> A claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses:  (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*Londono v. Turkey Creek, Inc.,* 609 So.2d at 20 (quoting *Neil v. S. Fla. Auto Painters, Inc.,* 397 So. 2d 1160, 1164 (Fla. Dist. Ct. App. 1981)) *as stated* in *Petillo*, 2009 WL 2178953 at *4; *also see* n. 12, *supra*.  In this case, but for the Beepots entering into the mortgage that underlies the state foreclosure action, there would not be any state or federal litigation between these parties concerning the Beepots' residence.  The mortgage executed in August 2007 is the critical component in both cases.  To say that the Beepots' federal claims go to the making of the mortgage and are wholly independent of the state court action appears to the undersigned to be an exercise in semantics that is unpersuasive. The same operative facts serve as the basis of both claims and the logical relationship

---

[19]"In matters of state law, federal courts are bound by the rulings of the state's highest court."  *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) *citing Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944).

between them is established.  Florida courts have considered TILA and RESPA claims for a number of years.  The undersigned has no doubt the Beepots present no issue so novel, under the TILA, the RESPA or the FDCPA, that the state circuit court overseeing the foreclosure case would be unable to reach a fair and just resolution of the parties rights.  The federal case should be dismissed in deference to the earlier filed, more advanced, state foreclosure case.

### D.  Stay of Federal Proceedings Pending Resolution of the State Action

Alternatively, the undersigned would recommend the federal case be stayed pending resolution of the parallel state court action.  *See e.g., Carson v. Wells Fargo Bank, N.A.*, No. 8:10-cv-2362-T17-EAJ, 2011 WL 2470099 (M.D. Fla. June 20, 2011) (stay granted as alternate relief).  While this course of action may seem a less onerous treatment of concurrent cases, the Supreme Court has commented *in dicta* that the effect of a stay is really no different than a dismissal.  *Moses H. Cone Hosp.*, 460 U.S. at 28.  In one of the preeminent abstention cases the Supreme Court stated that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal."  *Id.; see also Johnson & Johnson,* 2010 WL 1030121 at *2 (quoting same).  Therefore, the undersigned submits to the District Court that if it sees fit, an alternative to dismissal of the instant action is to grant a stay, pending the outcome of the state court proceedings.

### III.   CONCLUSION

For the reasons stated above, the undersigned would recommend the District Court follow the lead of *Petillo* and *Carson* and dismiss this federal action, which appears to have been brought in response to the state foreclosure case, without prejudice to the Beepots

seeking relief through the assertion of the compulsory counterclaims in the foreclosure action.  To summarize, it is respectfully recommended:

1.      The request for dismissal of this case as stated in Chase's Amended Motion to Dismiss (Doc. #13) **be granted without prejudice** to the Beepots seeking relief in the state foreclosure case;

2.      The initial Motion to Dismiss (Doc. #11) **be deemed moot** in light of the dismissal on alternate gounds;

3.      The Beepots' recently filed motion for summary judgment (Doc. #28) also **be deemed moot** in light of the dismissal of the complaint;[20]

4.      Alternatively, this action be stayed pending resolution of the state foreclosure case.

**DONE AND ENTERED** at Jacksonville, Florida this 3rd day of August, 2011.

_Thomas E. Morris_
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:

The Hon. Marcia Morales Howard
Counsel of Record

---

[20]The Court takes note of Defendant J.P. Morgan Chase National Corporate Services, Inc.'s Additional Written Argument (Doc. #32), filed August 3, 2011.  Review and consideration has been given to the additional argument, which does not alter the recommendations set forth herein.