**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALONZO BEEPOT and JOANNE
BEEPOT,

        Plaintiffs,

vs.                             Case No. 3:10-cv-423-J-34PDB

J.P. MORGAN CHASE NATIONAL
CORPORATE SERVICES, INC.,

        Defendant.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant J.P. Morgan Chase National

Corporate Services, Inc.'s Renewed Motion to Dismiss, or in the Alternative, Motion for a

More Definite Statement and Memorandum of Law (Doc. 73; Motion to Dismiss), filed on

April 30, 2014.  Plaintiffs Alonzo and Joanne Beepot (the Beepots) filed a response in

opposition to the Motion to Dismiss on May 14, 2014.  <u>See</u> Plaintiffs' Memorandum of Law

in Opposition to J.P. Morgan Chase National Corporate Services Inc.'s Renewed Motion to

Dismiss, or in the Alternative Motion for a More Definite Statement and Memorandum of Law

(Doc. 81; Response).[1]  In addition, the Beepots have filed two motions to amend the

_____

[1] Both parties also filed several motions to strike. <u>See</u> Defendant's Motion to Strike Plaintiffs' Amended Certificate of Interested Persons and Corporate Disclosure Statement (Doc. 82); Defendant's Motion to Strike Plaintiffs' Motion for Entry of Default/Default with Prejudice (Doc. 93); Plaintiffs' Motion to Strike Defendant's Response in Opposition to Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff (Doc. 95); Plaintiffs' Motion to Strike Defendant's Response in Opposition to Plaintiffs' Motion to Strike Defendant's Response in Opposition to Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff (Doc. 104); Defendant's Motion to Strike Plaintiffs' Motion for Entry of Default Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure (Doc. 116).  In support of these Motions, the parties cite Rule 12(f), Federal Rules of Civil Procedure (Rule(s)).  Rule 12(f)(2) provides that, upon motion by a party, the Court "may strike <u>from a pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." <u>See</u> Rule 12(f) (emphasis added). As such, only material found in a "pleading" may be stricken pursuant to Rule 12(f). <u>See</u> <u>Polite v. Dougherty Cnty. Sch. Sys.</u>,
(continued...)

complaint as well as several motions which appear to request leave to seek additional relief, supplement those requests for relief, and join additional parties.  See Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff (Doc. 86; Motion to Amend), filed May 28, 2014; Plaintiffs' Second Motion to Amend the Complaint Signed By Each Plaintff [sic] (Doc. 107; Second Motion to Amend), filed July 15, 2014.[2]  Defendant J.P. Morgan Chase National

---

[1](...continued)
314 F. App'x 180, 184 n.7 (11th Cir. 2008) (finding no error in the district court's denial of a motion to strike an affidavit because "motions to strike are only appropriately addressed towards matters contained in the pleadings; here, the affidavit was submitted as part of the motion for summary judgment, which is not a pleading"); Jeter v. Montgomery Cnty., 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007); Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999); Newsome v. Webster, 843 F. Supp. 1460, 1464-65 (S.D. Ga. 1994).  Rule 7(a) defines which documents constitute pleadings.  See Scarborough v. Principi, 541 U.S. 401, 417 (2004) (noting that Rule 7(a) "enumerat[es] permitted 'pleadings'").  Here, the Motions to Strike relate to a certificate of interested persons, as well as various motions and responses to motions.  As these filings do not constitute "pleadings" under Rule 7(a), the relief provided in Rule 12(f) is not available.  Accordingly, the Court will deny all of the aforementioned motions to strike.  Moreover, both parties are advised that the Court finds motions to strike to be a waste of time and resources.  Instead, the parties should focus on the merits of the matters before the Court.  Reflexively filing motions to strike simply multiplies the proceedings, and delays a resolution of any pending motion and ultimately the case.

The Beepots have also filed several motions requesting that the Court enter default judgment against Chase National.  See Plaintiffs' Motion for Entry of Default/Default With Prejudice (Doc. 85); Plaintiffs' Motion for Entry of Default Judgment (Doc. 109); Plaintiffs' Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure (Doc. 115) (collectively, Motions for Default Judgment).  Preliminarily, the Court notes that Chase National is not in default in this case.  Thus, no default judgment would be appropriate under Rule 55.  Moreover, "[t]he entry of a default judgment is committed to the discretion of the district court."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985).  "Entry of default judgment is a 'drastic remedy,' and should be used 'only in extreme situations.'"  Gardner v. Aloha Ins. Servs., 566 F. App'x 903, 906 (11th Cir. 2014) (quoting Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316-17 (11th Cir. 2002)).  Upon review of the procedural history of this case and in light of Chase National's diligent defense of this action, the Court finds that the "'exceptional circumstances that would justify entry of a default judgment are not present.'"  See Mitchell, 294 F.3d at 1317 (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).  Accordingly, the Motions for Default Judgment are due to be denied.

[2] The other motions are: Plaintiffs' Motion for Relief from Proceedings Within This Action Including this Court's Order Rendered on April 10, 2014 [Doc 69] (Doc. 76; First Motion for Relief From Proceedings); Plaintiffs' Motion to Supplement Plaintiffs' [First Motion for Relief From Proceedings] (Doc.78); Plaintiffs' Motion for Relief Because the 4th Judicial Circuit Court of Florida Denied the Parties Equal Protection of the Laws and the Plaintiffs' Due Process Rights and JPMorgan Chase & Co, the Defendant, JPMorgan Chase Bank, National Association, Their Law Firms and Attorneys Conspired and Committed Fraud and Fraud on the Court in this Action and During the State Court Foreclosure Proceeding (Doc. 97; Second Motion for Relief From Proceedings); Plaintiffs' Motion to Supplement Plaintiffs' [Second Motion for Relief From Proceedings] (Doc. 100); Plaintiffs' Motion to Supplement the Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff [Doc 86] (Doc. 101); Plaintiffs' Second Motion to Supplement the Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff [Doc 86] (Doc. 103); Plaintiffs' Second Motion to Supplement Plaintiffs' [Second Motion for Relief
(continued...)

Corporate Services, Inc. (Chase National) has filed responses in opposition to Plaintiffs' Motions to Amend, as well as Plaintiffs' various other motions. See Defendant's Response in Opposition to Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff (Doc. 91); Defendant's Response in Opposition to Plaintiffs' Second Motion to Amend Complaint Signed by Each Plaintiff (Doc. 110; Response to Second Motion to Amend).[3] Accordingly, the Motion to Dismiss is ripe for review.

## I.    Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint

_____

[2](...continued)
From Proceedings] (Doc. 105); and Plaintiffs' Motion to Add Plaintiff(s) and Defendant(s) as Parties in this Action Pursuant to Rule 19 and 20, Federal Rules of Civil Procedure (Doc. 108).

[3] Defendant's other responses are: Defendant's Response to and Motion to Strike Plaintiffs' [First Motion for Relief From Proceedings] and Plaintiffs' Motion to Supplement Plaintiffs' [First Motion for Relief From Proceedings] (Doc. 83); Defendant's Response in Opposition to Plaintiffs' [Second Motion for Relief From Proceedings] (Doc. 102); Defendant's Response in Opposition to and Motion to Strike Plaintiffs' Motion to Add Plaintiff(s) and Defendant(s) as Parties in this Action Pursuant to Rule 19 and 20, Federal Rules of Civil Procedure (Doc. 111). Notably, Documents 83 and 111, set forth Defendant's responses in opposition as well as motions to strike. See generally Docs. 83 and 111. For the reasons discussed in footnote 1, the Court will deny these motions to strike.

should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 678, 680-81.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).[4]

---

[4]  The Court notes that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Although the Beepots are now pursuing their claims pro se, their former counsel drafted and filed the Amended Complaint.  See Amended Complaint at 12.  As such, the Court does not consider the Amended Complaint to be a "pro se pleading."  However, the Court will liberally construe the Beepots' pro se proposed second amended complaint.  See Second Motion to Amend.  Nonetheless, "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in
(continued...)

## II.    Extrinsic Evidence

At the outset, the Court notes that the parties submitted several exhibits in support of, and in opposition to, the Motion to Dismiss.  See generally Motion to Dismiss, Exs. A-D; Response, Exs. A-C.  In addition, Chase National requests that the Court take judicial notice of "all proceedings and pleadings in the State Court Action (including the appellate proceedings . . . ) pursuant to Rule 201, Federal Rules of Evidence."  See Motion to Dismiss at 2.  When a party moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and matters outside of the pleadings are presented to and not excluded by the court, the motion is ordinarily treated as if it were a motion for summary judgment under Rule 56.  SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1531-32 (11th Cir. 1990).  Nevertheless, the Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  SFM Holdings, 600 F.3d at 1337; see also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267-68 (11th Cir. 2002).  The Court, in its discretion, declines to consider any documents beyond those which comply with the above exceptions, and thus, the Motion to Dismiss will not be converted to a motion for summary judgment.  Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1232 (11th Cir. 2010); Jones, 917 F.2d at 1531-32.

---

[4](...continued)
order to sustain an action.'"  Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 706 (11th Cir. 2010)).

Upon review of the Motion to Dismiss and Response, the Court notes that most of the exhibits submitted are public records.[5]  Motion to Dismiss, Exs. A-D; Response, Exs. A, C. Under appropriate circumstances, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment.  This is so, as long as such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). Moreover, "a court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).  The exhibits attached to the Motion to Dismiss and Response are documents that were filed in the prior state court proceedings out of which the Beepots' instant claims arose, therefore, they are public records not capable of reasonable dispute, and appropriate for judicial notice.  Horne, 392 F. App'x at 802 ("The district court properly took judicial notice of the documents in [plaintiff's] first case . . . .").  Moreover, because the state court proceedings are central to the Beepots' claims in this action, the Court will consider this evidence in ruling on the Motion to Dismiss. Talley v. Columbus, Ga. Hous. Auth., 402 F. App'x 463, 465 n.4 (11th Cir. 2010) ("Although the district court was ruling on a motion to dismiss, the court properly examined extrinsic

---

[5] Exhibit B to the Response appears to be a 2008 Mortgage Interest Statement in the name of Joanne A. Beepot related to the Subject Property.  The Court finds that this document is not central to the Beepots' claims and is otherwise not appropriate for consideration on a motion to dismiss.  Therefore, the Court will not consider this Exhibit in resolving the Motion to Dismiss.

documents detailing [plaintiff's] previous state and federal court cases that related to the condemnation of his property: the cases were central to [plaintiff's] instant federal claim.").

## III.    Background

JP Morgan Chase Bank, N.A. (Chase Bank) filed a foreclosure action against the Beepots in the Circuit Court of the Fourth Judicial Circuit, in and for Clay County, Florida on February 24, 2009 (State Foreclosure Action).[6]  See  Register of Actions for Case No. 2009-CA-000528 (State Foreclosure Docket).[7]   On June 2, 2009, the state court granted Chase Bank's Motion for Summary Judgment of Foreclosure, and entered a Final Summary Judgment of Foreclosure (the Foreclosure Judgment) against the Beepots with regard to a mortgage on property located at 2420 Daniels Landing, Orange Park, Florida (the Subject Property).   See Motion to Dismiss, Ex. A.  The court set a sale date of August 28, 2009, however, the State Foreclosure Docket reflects that on July 2, 2009, the Beepots filed a Motion for Relief from Summary Judgment in the State Foreclosure Action (First Motion for Relief from Judgment),[8] and the foreclosure sale was cancelled.

On March 19, 2010, the Beepots filed another Motion for Relief from Summary Judgment (Second Motion for Relief From Judgment) in state court.  See Motion to Dismiss, Ex. B.   In the Second Motion for Relief From Judgment, the Beepots argued that the

---

[6]   The parties have not provided the Court with a copy of the Complaint in the State Foreclosure Action. However, the parties' arguments and assertions reflect that they agree that the State Foreclosure Action involves the same loan and the same real property as are at issue in the instant case.

[7]   See  Clay  County,  Florida  Clerk  of  Courts  Website,  available  at http://clayclerk.com/OdysseyPA/CaseDetail.aspx?CaseID=1138413 (last visited October 16, 2014).

[8] A copy of the First Motion for Relief From Judgment, filed in state court, can be found as Exhibit L to the Beepots' Second Motion for Relief From Proceedings, filed in this lawsuit.

Foreclosure Judgment should be set aside "based on the discovery of new evidence," and alleged that Chase Bank "forged . . . Alonzo Beepots' [sic] signature in paperwork associated with the mortgage transaction."  Second Motion for Relief at 1.  Additionally, the Beepots argued that Chase Bank

> failed to furnish copies of the rights of recession to [the Beepots], failed to provide statements of the maximum monthly payments on the mortgage transaction, failed to provide [the Beepots] with all applicable Truth in Lending disclosure statements, failed to provide [the Beepots] with correct HUD-1 statements and extended credit without regard to the payment ability of the borrower.

Id. at 2.  The Beepots also alleged that Chase Bank violated specific provisions of TILA and of RESPA, and "breached the fiduciary duty owed" to the Beepots, and "an implied contractual covenant of good faith and fair dealing."  Id.

While their Second Motion for Relief From Judgment was pending in state court, on May 12, 2010, the Beepots initiated in this Court the instant federal lawsuit against Chase National.  See Complaint (Doc. 1).  Although the Court struck their initial Complaint, see Order (Doc. 5), the Beepots filed an Amended Complaint (Doc. 6) on June 2, 2010.  In it, the Beepots allege that they are "homeowners in Florida, residing in the home they own at 2420 Daniels Landing Drive, Orange Park, Florida 32003," and that they "purchased" the property on or about August 17, 2007.  Amended Complaint ¶¶ 9, 10.  They allege that Chase National is a "financial institution providing mortgages on real property" and that "[a]t all times relevant . . . Defendant owned, brokered and/or serviced Plaintiffs' mortgage loan."  Id. ¶ 2.[9]

---

[9]  Defendant Chase National acquired "certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as receiver," including the subject loan in question in this case.  See Order (Doc. 43) at 4 n.4.

The Beepots allege that certain documents were not provided to them by Chase National, and that they communicated with Chase National on June 29, 2009 "express[ing] their right to a full accounting of the loan and exercis[ing] their right to rescind." Id. ¶¶ 11-13. Based on these allegations, the Beepots assert the following eight claims: (1) Count I: Violation of Truth in Lending Act ("TILA") (15 U.S.C. § 1601), id. ¶¶ 14-19; (2) Violation of Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2601), id. ¶¶ 20-23; (3) Count III: Violation of the Fair Debt Collection [Practices] Act ("FDCPA") (15 U.S.C. § 1692), id. ¶¶ 24-28; (4) Count IV: Breach of Fiduciary Duty, id. ¶¶ 29-33; (5) Count V: Breach of Contract, Breach of Good Faith Dealings, and Infliction of Injury, id. ¶¶ 34-36; (6) Count VI: Breach of Covenant, id. ¶¶ 37-39; (7) Count VII: Quiet Title (All Known or Unknown and Claiming any Interest in the Property), id. ¶¶ 40-47; (8) Count VIII: Declaratory Relief, id. ¶¶ 48-52. As relief the Beepots seek actual, compensatory, consequential, statutory and punitive damages; rescission; restitution; interest; an injunction "to maintain the status quo pending adjudication"; and attorney's fees and costs.

Meanwhile, on September 21, 2010, the state court held a hearing on the Second Motion for Relief from Judgment, and in an Order dated September 27, 2010, the state court granted the Beepots' Second Motion for Relief from Judgment. See Order on Defendants' Motion for Relief of Judement [sic] Entered on June 2, 2009 and Defendants Motion for Continuance (Doc. 13-3; Order Granting Relief). After noting that counsel for the Beepots appeared at the scheduled hearing, and that counsel for Chase Bank did not appear, the state court set aside the June 2, 2009 Foreclosure Judgment "based upon the grounds stated for relief" in the Beepots' Second Motion for Relief from Judgment. Id. On September

30, 2011, this Court entered an Order staying the federal proceedings pending the resolution of the concurrent State Foreclosure Action.  <u>See</u> Order (Doc. 43) at 25.  The Court directed the parties to file joint status reports on the state proceedings every ninety days.  <u>Id.</u>

While this case was stayed, matters proceeded in state court.  Chase Bank filed a Motion for Rehearing and/or Reconsideration of the state court's Order Granting Relief, and after a hearing, the state court entered an order on February 14, 2012, granting Chase Bank's Motion and vacating the Order Granting Relief.  <u>See</u> Joint Status Report (Doc. 46). On May 11, 2012, the Beepots filed a Motion for Leave to Amend Defendants' Answer and File Defendants' Counterclaim.  <u>See</u> State Foreclosure Docket.  The state court held a hearing on the Beepots' Motion for Leave to Amend, as well as their Second Motion for Relief, and on May 31, 2012, the court entered an order denying these motions and scheduling a foreclosure sale for July 18, 2012.  <u>See</u> Joint Status Report (Doc. 52); Motion to Dismiss, Ex. C.

On June 11, 2012, the Beepots filed a Motion for Rehearing which the state court promptly denied, and on June 28, 2012, the Beepots filed a Notice of Appeal.  <u>See</u> Joint Status Report (Doc. 54).  In addition, on July 4, 2012, the Beepots filed an Emergency Motion to Stop the Foreclosure Sale and Stay Proceedings Pending Review.  <u>Id.</u>  The state court held a hearing on the matter and instructed the Beepots to post a supersedeas bond or the foreclosure sale would proceed as scheduled.  <u>Id.</u>  The Beepots failed to post the bond, and the foreclosure sale proceeded on July 18, 2012, resulting in the sale of the property to a bona-fide third-party buyer.  <u>Id.</u>  The state court proceedings concluded when Florida's First District Court of Appeal affirmed the state circuit court's decision on November

6, 2013, and issued the mandate on December 19, 2013.  See Amended Defendant's Status Report and Response to Court Order (Doc. 61), Ex. D: Opinion; Motion to Dismiss, Ex. D: Mandate.  Following the resolution of the Beepots' state court appeal, this Court lifted the stay of this case, and reopened the action.  See Order (Doc. 69) at 8.  Chase National then timely filed the instant Motion to Dismiss.

## IV.   Motion to Dismiss

### A.   Rooker-Feldman

First, Chase National contends that dismissal is warranted because this Court "lacks subject matter jurisdiction over [the Beepots'] claims under the Rooker-Feldman doctrine because the claims essentially seek to overturn the final judgment in the State Court Action." See Motion to Dismiss at 6.  "[G]enerally speaking, the Rooker-Feldman doctrine bars federal district courts from reviewing state court decisions." Nicholson v. Shafe, 558 F.3d 1266, 1270 (11th Cir. 2009); see also Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983).  This doctrine applies "both to claims actually raised in state court as well as those that are 'inextricably intertwined' with the state court judgment." See Manning v. Harper, 460 F. App'x 872, 874-75 (11th Cir. 2012) (quoting Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)).  However, the Eleventh Circuit instructs that "the Rooker-Feldman doctrine does not apply if the plaintiff's state-court appeal was still pending at the time when the plaintiff filed [her] complaint in federal court." Gottschalk v. Gottschalk, No. 10-11979, 2011 WL 2420020, at *4 (11th Cir. June 16, 2011) (citing Nicholson, 558 F.3d at 1279).  Moreover, the resolution of the appeal "after the filing of the federal action does not 'vanquish jurisdiction' in the federal court."

11

Nicholson, 558 F.3d at 1279 n.13.  Accordingly, because the Beepots initiated the instant lawsuit while the state court case and subsequent appeal were still pending, their claims are not barred by the Rooker-Feldman doctrine.

### B.    Res Judicata and Compulsory Counterclaims

Although the Rooker-Feldman doctrine does not bar the Beepots' lawsuit, the Court next considers whether their claims are barred by state preclusion law.  "When a suit is brought under federal question jurisdiction, and the federal court 'is asked to give res judicata effect to a state court judgment, it must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation.'"  Petillo v. World Savings Bank, FSB, No. 6:08-cv-1255-Orl-19GJK, 2009 WL 2178953, at *3 (M.D. Fla. July 21, 2009) (quoting Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985)); Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 676 (11th Cir. 2014) ("When evaluating the effect of a state court judgment, we apply the preclusion law of the rendering state.").

The doctrine of res judicata under Florida law provides that

"[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain and defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action."

See Madura v. Countrywide Home Loans, Inc., 344 F. App'x 509, 517 (11th Cir. 2009) (quoting Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001)).  Thus, under Florida law, for res judicata to apply, there must be:

"(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity]

12

of the persons for or against whom the claim is made"; and (5) the original claim was disposed on the merits.

See Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1074 (11th Cir. 2013) (quoting Andela v. Univ. of Miami, 692 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010)).  "The policy 'underlying res judicata is that if a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in any court (except, of course, for appeals by right).'" See Zikofsky v. Marketing 10, Inc., 904 So. 2d 520, 523 (Fla. 4th Dist. Ct. App. May 25, 2005) (quoting Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004)).

Moreover, "the failure to bring a compulsory counterclaim in a state court proceeding bars a subsequent suit in federal court on that claim." See Petillo, 2009 WL 2178953, at *4 (citing Montgomery Ward Dev. Corp. v. Juster, 932 F.2d 1378, 1380-82 (11th Cir. 1991)). Rule 1.170 of the Florida Rules of Civil Procedure (Florida Rule(s)) governs the determination of whether a particular counterclaim constitutes a compulsory counterclaim under Florida law. See id. That Florida Rule, which incorporates Rule 13(a) of the Federal Rules of Civil Procedure into Florida law, provides:

> "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

See Juster, 932 F.2d at 1380-81 (quoting Fla. R. Civ. P. 1.170(a)). Pursuant to this Florida Rule, "a compulsory counterclaim is a defendant's cause of action 'arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim.'" Id. (quoting Yost v. Am. Nat'l Bank, 570 So. 2d 350, 352 (Fla. 1st Dist. Ct. App. 1990)).  "It is termed

13

compulsory because the claim will be barred unless raised by the defendant in the original suit." <u>Yost</u>, 570 So. 2d at 352.

Under Florida law, the "'logical relationship test' is the yardstick for measuring whether a claim is compulsory." <u>See</u> <u>Londono v. Turkey Creek, Inc.</u>, 609 So. 2d 14, 20 (Fla. 1992). Florida applies the same "logical relationship" test as applied in the Eleventh Circuit such that:

> "[a] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."

<u>Juster</u>, 932 F.2d at 1381 (quoting <u>Neil v. S. Fla. Auto Painters, Inc.</u>, 397 So. 2d 1160, 1164 (Fla. 3d Dist. Ct. App. 1981)); <u>see also</u> <u>Londono</u>, 609 So. 2d at 20. "The aggregate operative facts that can act as a common basis for both claims have been broadly construed in Florida." <u>Juster</u>, 932 F.2d at 1381. Indeed, because the rule is "designed to foreclose the possibility of duplicative litigation . . . Florida courts encourage a 'broad, realistic interpretation' of the rule that allows the rule to accomplish its goal." <u>See</u> <u>Puff 'N Stuff of Winter Park, Inc. v. Fed. Trust Bank, F.S.B.</u>, 945 F. Supp. 1523, 1530 (M.D. Fla. 1996) (quoting <u>Juster</u>, 932 F.2d at 1381).

### 1.    Identity of the parties and their capacity

Under Florida law, a judgment on the merits is conclusive between the "'same parties or their privies.'" <u>See</u> <u>AMEC Civil, LLC v. PTG Constr. Servs. Co.</u>, 106 So. 3d 455, 456 (Fla. 1st Dist. Ct. App. 2012) (quoting <u>Kimbrell v. Paige</u>, 448 So. 2d 1009, 1012 (Fla. 1984)). "'A privy is one who is identified with the litigant in interest.'" <u>Id.</u> (quoting <u>Progressive Am. Ins.</u>

14

Co. v. McKinnie, 513 So. 2d 748, 749 (Fla. 4th Dist. Ct. App. 1987)).  Although the named

plaintiff in the State Foreclosure Action was JPMorgan Chase Bank National Association,

and the defendant named here is J.P. Morgan Chase National Corporate Services, Inc.,

these entities are both wholly owned subsidiaries of JPMorgan Chase & Co.  See Motion at

12 n.7.  Chase National maintains that this relationship satisfies the "identity of the parties"

requirement for res judicata to apply, and the Beepots do not assert otherwise.  Indeed, in

the Amended Complaint, the Beepots do not distinguish between the entity that initiated the

State Foreclosure Action and the named defendant here.  See Amended Complaint at 9-11

(alleging that Chase National claims an interest in the Subject Property, "threaten[s] to

dispossess" the Beepots of the Property, and that a dispute exists between the parties

regarding "the right of [Chase National] to foreclose on the Property").  Moreover, the

interests of Chase Bank and Chase National in each case are the same, i.e., both entities

are involved in these actions as the owner, holder, or servicer of the Beepots' loan.

      In light of the relationship between Chase Bank and Chase National and the mutuality

of their interest with respect to the Beepots, the Court finds that they are privies.  See AMEC

Civil, LLC, 106 So. 3d at 456; see also Stogniew v. McQueen, 656 So. 2d 917, 920 (Fla.

1995) ("For one to be in privity with one who is a party to a lawsuit or for one to have been

virtually represented by one who is a party to a lawsuit, one must have an interest in the

action such that she will be bound by the final judgment as if she were a party."); Jasser v.

Saadeh, 103 So. 3d 982, 985 (Fla. 4th Dist. Ct. App. 2012); Jenkins v. Lennar Corp., 972 So.

2d 1064, 1065-66 (Fla. 3d Dist. Ct. App. 2008); Mercer v. Honda Motor Co., Ltd., 551 F.

Supp. 233, 234 (M.D. Fla. 1982).  Therefore, because the Beepots and a Chase entity are

parties to both actions, the Court finds that the identity of the parties requirement is satisfied. Likewise, there is no dispute that the quality and capacity of the persons and entities involved are the same in both suits.  <u>Jenkins</u>, 972 So. 2d at 1066.

**2.     Identity of "the thing sued for"**

The same loan transaction, mortgage, and residential property that are at issue here were the subject matter of the State Foreclosure Action.  Accordingly, the Court finds an identity of the thing sued for in both actions.  <u>See</u> <u>Nivia v. Nationstar Mortg., LLC</u>, No. 13-Civ-24080, 2014 WL 4146889, at *4 (S.D. Fla. Aug. 21, 2014).  As discussed below, the Beepots raised many of these same allegations as a defense to foreclosure in their Second Motion for Relief From Judgment in the State Foreclosure Action.  Although it is unclear whether the Beepots pursued all of the same remedies in the State Foreclosure Action that they request here, "the fact that a party brings two separate actions, both of which are based on the same transactions, occurrences and facts, but seeks remedies which are distinct in the two actions does not preclude the application of <u>res</u> <u>judicata</u>."  <u>See</u> <u>Benline v. City of Deland</u>, 731 F. Supp. 464, 467 (M.D. Fla. 1989); <u>Puff 'N Stuff of Winter Park, Inc.</u>, 945 F. Supp. at 1529 ("Simply because some remedies sought in the instant case are different from those sought in state court does not impede the operation of claim preclusion presently.").  Moreover, while the Beepots now bring these claims as "swords" rather than "shields," res judicata is still applicable.  <u>See</u> <u>Univ. Drive Prof'l Complex, Inc. v. Fed. Savings & Loan Ins. Corp. (In re Univ. Drive Prof'l Complex, Inc.</u>), 101 B.R. 790, 794 (Bankr. S.D. Fla. 1989); <u>Zikofsky</u>, 904 So. 2d at 524; <u>Hay v. Salisbury</u>, 92 Fla. 446, 456-57 (1926).

16

### 3.    Judgment on the merits

Next, the Court considers whether the State Foreclosure Action resulted in a final

judgment on the merits as required to apply res judicata.   Under Florida law, "issues

determined on a motion to set aside a default judgment or to vacate a final judgment are res

judicata." See AGB Oil Co. v. Crystal Exploration & Production Co., 406 So. 2d 1165, 1167

(Fla. 3d Dist. Ct. App. 1981).   Indeed, "[p]rinciples of res judicata also apply to matters raised

in postjudgment motions as well as to theories of recovery and defenses that could have

been presented in the prior litigation."   Bay Fin. Sav. Bank, F.S.B. v. Hook, 648 So. 2d 305,

307 (Fla. 2d Dist. Ct. App. Jan. 6, 1995).   As such, the Court finds that the state court's

decision to enter Final Judgment in favor of Chase Bank, deny the Beepots' Second Motion

for Relief from Judgment, and schedule the foreclosure of the Subject Property constitutes

a final judgment on the merits subject to principles of res judicata.  See AGB Oil Co., 406 So.

2d at 1167; Bay Fin. Sav. Bank, F.S.B., 648 So. 2d at 307; see also Hay, 92 Fla. at

457; Virgo v. Nat'l City Mortg. Co., 115 So. 3d 1072, 1074-75 (Fla. 4th Dist. Ct. App. June

19, 2013).

### 4.    Identity of the cause of action

"Identity of the cause of action is a question of 'whether the facts or evidence

necessary to maintain the suit are the same in both actions.'"  Lozman, 713 F.3d at 1074-75

(quoting Tyson v. Viacom, Inc., 890 So. 2d 1205, 1209 (Fla. 4th Dist. Ct. App. 2005)); see

also Madura, 344 F. App'x at 517 ("Claims are considered the 'same cause of action' if the

facts essential to the maintenance of both actions are the same, that is, if the evidence in

both cases is in essence the same.").   Significantly, "a court looks not only at the causes of

17

action actually raised in the first suit, but also at 'every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject matter' of the first litigation." Zikofsky, 904 So. 2d at 523 (quoting Tyson, 890 So. 2d at 1214 (Gross, J., concurring specially)).  This test is narrow and "extends to 'essentially connected' claims that a defendant in a former action failed to raise as a defense." Zikofsky, 904 So. 2d at 523; see also Lozman, 713 F.3d at 1078.

In the instant action, the Beepots assert several claims for relief based on the same loan transaction, mortgage, and residential property that were at issue in the State Foreclosure Action.  Upon careful review, the Court finds that, except for the alleged violation of the FDCPA, the Beepots' claims here were either actually raised in, or essentially connected to, the State Foreclosure Action.[10]  Compare Amended Complaint with Second Motion for Relief From Judgment.  In the Amended Complaint, the Beepots allege that Chase National violated TILA by purportedly failing to: deliver a proper notice of the right to rescind, disclose or accurately disclose the payment schedule or the total of payments, provide all applicable TILA disclosure statements, and provide a correct HUD-1 statement

---

[10] Given the vague and conclusory nature of the few allegations in support of the FDCPA claim, it is difficult to discern whether the conduct giving rise to this claim is part of the same aggregate of operative facts as the State Foreclosure Action. Because the FDCPA claims are due to be dismissed on other grounds, the Court will assume without deciding that these claims are not barred under claim preclusion principles.  See Bowen v. Wells Fargo Bank, No. 2:11-cv-91-FtM-29SPC, 2011 WL 3627320, at *4 (M.D. Fla. Aug. 17, 2011) (rejecting argument that FDCPA claims were compulsory counterclaims to state foreclosure action); Azar v. Hayter, 874 F. Supp. 1314, 1317 (N.D. Fla. 1995) (finding that the plaintiff's FDCPA claims were not compulsory counterclaims in the prior state action to collect the debt); Equity Residential Props. Trust v. Yates, 910 So. 2d 401 (Fla. 4th Dist. Ct. App. Sept. 21, 2005); Whigum v. Heilig-Meyers Furniture, Inc., 682 So. 2d 643 (Fla. 1st Dist. Ct. App. 1996) ("[A]n action to collect a consumer debt is not a compulsory counterclaim to an action under a statute regulating consumer collection practices."); see also Egge v. Healthspan Servs. Co., 115 F. Supp. 2d 1126, 1130 (D. Minn. 2000); Peterson v. United Accounts, Inc., 638 F.2d 1134, 1137 (8th Cir. 1981) (holding that the claim asserted under the FDCPA was a permissive, rather than compulsory counterclaim).

at the closing date.  <u>See</u> Amended Complaint at 3-5.  The Beepots made these same arguments in the Second Motion for Relief From Judgment, asserting there that Chase Bank "failed to furnish copies of the rights of recession [sic] to [the Beepots], failed to provide statements of maximum monthly payments on the mortgage transaction, failed to provide [the Beepots] with all applicable Truth in Lending disclosure statements, failed to provide [the Beepots] with correct HUD-1 statements and extended credit without regard to the payment ability of the borrower."  <u>See</u> Second Motion for Relief From Judgment at 2.

Next, the Beepots raise a claim under RESPA based on Chase National's failure to provide notice of the transfer of the servicing contract or duties, and to properly provide the HUD-1 settlement statement.  <u>See</u> Amended Complaint at 5-6.  Likewise, the Second Motion for Relief From Judgment contains these same contentions: "[Chase Bank] directly and/or through agents, employees, entities, or persons involved in the extension of credit failed to provide notice as a 'servicer' under [RESPA], that the servicing contract had been transferred."  <u>See</u> Second Motion for Relief From Judgment at 2.  In addition, the Beepots assert state law claims for breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, infliction of injury, quiet title and declaratory relief. <u>See</u> Amended Complaint at 7-11.  These claims are based on Chase National's purported conduct in inducing the Beepots to enter the loan transaction, failing to provide the proper disclosures, and attempting to foreclose on the Subject Property.  <u>Id.</u>  In the State Foreclosure Action, the Beepots also contended that Chase Bank breached a fiduciary duty owed to the Beepots, as well as the implied contractual covenant of good faith and fair dealing.  <u>See</u> Second Motion for Relief From Judgment at 2.

Because the same purported facts and legal claims that the Beepots present in the Amended Complaint were previously raised and argued in the Second Motion for Relief From Judgment, the Court finds that the identity of the cause of action element is met with respect to the Beepots' TILA, RESPA, and state law claims.[11]  See Bracha Holding, Inc. v. U.S. Small Bus. Admin., 800 So. 2d 657, 659 (Fla. 3d Dist. Ct. App. 2001) (finding plaintiff's claims barred where they were "virtually identical to its answer and affirmative defenses raised in the foreclosure proceeding"); see also Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998) (interpreting analogous principle under federal law) ("[F]or res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleading or otherwise in the earlier action." (emphasis in original)).  Morever, to the extent some of the

---

[11] Indeed, the Beepots' state law claims constitute compulsory counterclaims in that they involve "the same aggregate of operative facts" and circumstances as the State Foreclosure Action and are "logically related" to that action.  See Martinez v. Bank of Am. Corp., No. 14-21467-CIV, 2014 WL 2735668, at *3 (S.D. Fla. June 16, 2014) ("Plaintiff is prohibited from maintaining an independent action challenging origination of his loan or the validity of his Note and Mortgage because those claims are compulsory counterclaims that were required to be asserted in the State Foreclosure Action."); Robb v. Rahi Real Estate Holdings LLC, No. 10-81474-CIV, 2011 WL 2149941, at *8 (S.D. Fla. May 23, 2011); Petillo, 2009 WL 2178953, at *4-5; Floridian Cmty. Bank, Inc. v. Bloom, 25 So. 3d 43, 45 (Fla. 4th Dist. Ct. App. 2009) ("[T]he respondents' claims for breach of loan extension agreement, breach of covenant of good faith and fair dealing, novation and rescission of the loan extension agreement, involve parties, properties, facts and circumstances and security instruments identical to those involved in FCB's mortgage foreclosure action."); Bracha Holding, Inc. v. U.S. Small Bus. Admin., 800 So. 2d 657, 659 (Fla. 3d Dist. Ct. App. 2001); see also Wallace v. Mortg. Elec. Registration Sys., Inc., No. 8:10-cv-2509-T-23AEP, 2011 WL 1298195, at *2 (M.D. Fla. Apr. 1, 2011).
    In addition, it appears that the TILA claims are likely compulsory counterclaims as well.  See Plant v. Blazer Fin. Serv., Inc. of Ga, 598 F.2d 1357, 1360-64 (5th Cir. 1979) (finding that a counterclaim on the debt evidenced by a note which is the subject of a truth-in-lending action, is compulsory); Chapman v. Aetna Fin. Co., 615 F.2d 361, 364 (5th Cir. 1980) (finding Georgia's compulsory counterclaim rule operates to preclude adjudication of Truth-in-Lending claims that are not asserted in precedent Georgia state court suits on the underlying debt); Iannucci v. Bank of Am., NA, No. 2:14-cv-106-FtM-38DNF, 2014 WL 2462978, at *3 (M.D. Fla. June 2, 2014) (noting the court's inclination to agree, although not deciding, that a TILA claim was a compulsory counterclaim to the state foreclosure action); Wallace, 2011 WL 1298195, at *2 but see In re Weinraub, 361 B.R. 586, 591-92 (Bankr. S.D. Fla. 2007) (concluding that TILA claims were not compulsory counterclaims); In re Tomasevic, 275 B.R. 86, 101 (Bankr. M.D. Fla. 2001) (finding that claim under section 121 of TILA was compulsory, but claim under 125 of TILA was not a compulsory counterclaim to a state foreclosure action).

claims here slightly differ from the precise arguments presented to the state court, the Court

has no difficulty concluding that they are nevertheless "'essentially connected with the

subject matter' of the first litigation." See Zikofsky, 904 So. 2d at 523.  The allegations in the

Amended Complaint are intertwined with the validity of the loan and mortgage, the rights of

those claiming an interest in the Subject Property, and the propriety of foreclosure, all

matters adjudicated in the State Foreclosure Action.   As such, the Court concludes that

Counts I, II, IV-VIII of the Complaint are barred by the doctrine of res judicata.[12]

### C.   FDCPA

In the Amended Complaint, the Beepots allege that Chase National violated the

FDCPA by: failing to "cease communications with Plaintiffs' [sic] after such request to do so,

in violation of 15 U.S.C. § 1692(a)(1)," engaging in "collection of amounts that have not been

expressly authorized by the agreement creating the debt or permitted by law," and failing to

---

[12] The Beepots argue, inter alia, that res judicata should not apply because the State Foreclosure Action was tainted by fraud on the court, and they were deprived of due process. See Response at 5.  Florida law recognizes an exception to the doctrine of res judicata where its application will work an injustice, see Flesche v. Interstate Warehouse, 411 So. 2d 919, 924 (Fla. 1st Dist. Ct. App. 1982), and the Court will construe the Beepots' fraud-on-the-court argument to be premised on this exception.  The Beepots argue that an act of fraud on the court deprived them of a "reasonable opportunity to raise [their] federal claims in the state court proceedings."  See Response at 4.  However, the Beepots did raise these same purported violations of federal law before the state court.  To the extent the Beepots argue that there were improprieties in the State Foreclosure Action, the Beepots raised these arguments on appeal.  Because the Florida appellate court considered the Beepots' arguments regarding the alleged "fraud on the court" and purported procedural errors, and nevertheless affirmed the judgment of foreclosure, the Court can discern no basis for holding that enforcing the res judicata effect of that judgment would work a manifest injustice.  See Response to Motion to Amend, Ex. A: Appellants' Initial Brief at 10-17, 21-29.  Indeed, courts in other jurisdictions are hostile to the proposition that fraud on the court is a means of defeating the defense of res judicata, and refuse to entertain such theories when the parties raising them could have litigated the purported fraud in the original action.  See Johnson v. Champions, 990 F. Supp. 2d 1226, 1241 (S.D. Ala. 2014) (applying Alabama law).  This reasoning is persuasive, and the Court concludes that Florida's manifest injustice exception to the application of res judicata does not apply here.  See Virgo, 115 So. 3d at 1074-75.
    In addition, the Beepots also raise a number of arguments in their Response to the Motion to Dismiss based on Chase National's purported violations of the Local Rules of this Court.  The Court rejects these arguments because they are frivolous, irrelevant, and based on misinterpretations of the Local Rules.

provide "validation of the debt within five (5) days of the initial communication with Plaintiffs' [sic], . . . in violation of 15 U.S.C. § 1692(g)." See Amended Complaint at 6-7.[13]  To state a claim under the FDCPA, a plaintiff must allege that: "'(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'"  Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002) (quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000)); Cole v. Lobello Painting, Inc., No. 8:06–CV–2171–JDW–MSS, 2007 WL 2330860, at *2 (M.D. Fla. Aug.14, 2007) (same); see also Buckman v. Am. Bankers Ins. Co. of Fla., 115 F.3d 892, 894–95 (11th Cir. 1997) (per curiam) ("The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.'").

"The FDCPA defines a 'debt collector' as a person who uses an instrumentality of interstate commerce or the mails in a business which has the principal purpose of collecting debts, or who regularly collects debts owed to another."  Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 460 (11th Cir. 2009) (citing 15 U.S.C. § 1692a(6)).  Although the Beepots assert in a conclusory manner that, "[o]n information and belief," Chase National is a debt collector within the meaning of the statute because it "regularly collects debt owed to another person," the Amended Complaint contains no factual allegations to support this legal conclusion.  Indeed, the only relevant facts alleged in the Amended Complaint are that Chase National "has conducted business as a financial institution providing mortgages on

_____

[13] The statutory provisions cited in the Amended Complaint are mislabeled.  It appears the correct provisions are 15 U.S.C. §§ 1692c(c) (failing to cease communications), 1692f(1) (engaging in collection of unauthorized amounts), and 1692g (failing to provide validation).

real property in the state of Florida," it "owned, brokered and/or serviced Plaintiffs' mortgage loan," and "[s]ervicing contract or duties" were transferred to Chase National. Id. at 1, 3, 6. Significantly, in Warren, the Eleventh Circuit explained that because "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6)," a provision not at issue here, this "reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act." Warren, 342 F. App'x at 460 (emphasis added). The Warren court further noted that applying this same reasoning, "several courts have held that 'an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)." Id. (collecting cases); see also Ausar-El ex rel. Small, Jr. v. BAC (Bank of Am.) Home Loans Servicing LP, 448 F. App'x 1, 2 (11th Cir. 2011) ("[A]n enforcer of a security interest . . . falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6).").

Here, setting aside the conclusory allegations which merely track the statutory language, the Beepots fail to set forth any facts to support the alleged FDCPA violations. See Twombly, 550 U.S. at 555 ("[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotations omitted)). Indeed, the only discernable actions attributable to Chase National, as relevant to this claim, are its efforts to enforce its security interest in the Subject Property. See Amended Complaint ¶ 2.[14]

---

[14] Notably, prior to the stay, Chase National filed a separate motion to dismiss on these grounds. The Beepots' response to that motion reaffirms that their FDCPA claim is premised entirely on Chase National's attempt to foreclose on the Subject Property. See Plaintiff's Motion in Opposition to Defendant J.P. Morgan
(continued...)

Because foreclosing on a security interest is not debt collection activity under the provisions of the FDCPA at issue here, this conduct is insufficient to support the Beepots' claim. <u>See Warren</u>, 342 F. App'x at 460-61; <u>Sanders v. Bank of Am.</u>, No. 1:13-cv-1904-WSD-RGV, 2013 WL 6587783, at *7 (N.D. Ga. Oct. 1, 2013). Thus, absent any factual allegations to suggest that these purported violations of the FDCPA are premised on anything other than Chase National's foreclosure on the Subject Property, the Court concludes that the Beepots fail to sufficiently allege that Chase National is a "debt collector" engaged in "debt collection activity" within the meaning of the FDCPA. <u>Compare Reese v. Ellis, Painter, Ratterree & Adams, LLP</u>, 678 F.3d 1211 (11th Cir. 2012) <u>with Warren</u>, 342 F. App'x at 460.[15] Accordingly, this claim is due to be dismissed.

## V.    Motions to Amend

In light of the foregoing, the Court finds that the Motion to Dismiss is due to be granted, and the Amended Complaint is due to be dismissed. However, courts must generally give a <u>pro se</u> party at least one opportunity to amend before dismissing the

---

[14](...continued)
Chase National Corporate Services, Inc., Motion to Dismiss or in the Alternative, Motion for a More Definite Statement and Memorandum of Law (Doc. 12) at 9-10.

[15] In addition, the term "debt collector" under the FDCPA does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." <u>See</u> 15 U.S.C. § 1692a(6)(F)(iii). "Thus, a consumer's creditors or an assignee of a debt are not considered 'debt collectors' so long as the debt was not in default at the time it was assigned." <u>See</u> <u>Ware v. Bank of Am. Corp.</u>, No. 1:13-CV-1647-CC, 2014 WL 1302605, at *6 (N.D. Ga. Jan. 8, 2014); <u>Fenello v. Bank of Am., NA</u>, 577 F. App'x 899, 902 (11th Cir. 2014). The Court can discern from the Amended Complaint only that the loan originated in August 2007, and was later transferred to Chase National. <u>See</u> Amended Complaint ¶¶ 2, 10-12. Because Chase National is the assignee of the debt, it is not a debt collector unless the loan was in default at the time Chase National acquired it. The Amended Complaint provides no information on this point, and therefore the Court is unable to determine whether Chase National falls within the statutory definition of a "debt collector" for this reason as well. <u>See</u> <u>Sanders</u>, 2013 WL 6587783, at *6.

complaint.  See  Cornelius v. Bank of Am., NA, ___ F. App'x ___, 2014 WL 4747332, at *3 (11th Cir. Sept. 25, 2014).   Even so, a court need not allow an amendment where amendment would be futile.  Id.  "Futility justifies the denial of leave to amend where the proposed amended complaint would be subject to dismissal."  See Edward v. BAC Home Loans Serv., L.P., 534 F. App'x 888, 891 (11th Cir. 2013); Cornelius, 2014 WL 4747332, at *3.  Here, the Beepots have filed two Motions to Amend the Complaint as well as a variety of other motions requesting "relief" from the state court proceedings and leave to add additional parties.  See supra note 2.[16]  Accordingly, the Court will consider the Beepots' proposed amendments to determine whether leave to amend is warranted.

Upon careful review, the Court determines that the Second Motion to Amend is due to be denied and the Amended Complaint dismissed with prejudice because the Beepots' proposed amendments are futile.  In the Second Motion to Amend, the Beepots fail to overcome the problems inherent in the Amended Complaint as identified above, and seek to add new claims that would also be subject to dismissal.  First, the Beepots appear to supplement only their TILA, RESPA and Quiet Title claims.  The Court has reviewed the new allegations as to those claims and finds that they do not alter the Court's prior determination that these claims are barred by res judicata.  See Second Motion to Amend at 3-11.  Indeed, any further attempt to amend the barred claims would be futile.  Moreover, the Second

_____

[16] The Court has reviewed these ten motions and finds them to be largely repetitive.  Notably, in the Second Motion to Amend, the Beepots assert that "this second motion to amend seeks to consolidate within issues raised so far in this action."  See Second Motion to Amend at 2.  Because it appears that the Beepots intend for their Second Motion to Amend to consolidate and supplant their prior filings, the Court will not address the numerous other related motions and will consider the Beepots' arguments only as set forth in the Second Motion to Amend.

Motion to Amend offers no indication that the Beepots can correct the deficiencies in the FDCPA claim.  As such, the Court will dismiss the claims raised in the Amended Complaint with prejudice.

In addition, in the Second Motion to Amend the Beepots raise several new causes of action that were not previously asserted in the Amended Complaint.  See generally id., Ex. B: Complaint of Offenses Charged.  These new claims are all premised on alleged errors and purported fraud occurring in this lawsuit or the State Foreclosure Action.  Specifically, the Beepots allege that the state court improperly denied their motion for a rehearing/new trial without allowing the motion to be scheduled for a hearing.  Id., Ex. B at 3-4.  In addition, they argue that Chase Bank filed certain affidavits in support of its Motion for Summary Judgment of Foreclosure in "total concealment" from them, and that the state court improperly relied on this evidence to resolve Chase Bank's summary judgment motion.  Id., Ex. B at 5-8.  The Beepots also contend that Chase, its attorneys and employees committed fraud by including allegedly false statements in their filings with this Court as well as the state court.  Id., Ex. B at 8-16.  Last, the Beepots maintain that they rescinded their loan pursuant to 15 U.S.C. § 1635, and that Chase failed to comply with the requirements of TILA upon receiving the purportedly valid notice of rescission.  See id., Ex. B at 16-19.

To the extent the Beepots assert a new TILA claim pursuant to 15 U.S.C. § 1635, based on Chase's alleged failure to respond to their notice of rescission, this claim is barred by res judicata for the reasons stated in Part IV.B.  As with their prior TILA claim, the Beepots also raised these alleged violations of § 1635 as a defense to the State Foreclosure Action.  Indeed, in the Second Motion for Relief From Judgment, the Beepots argued that

> [Chase] directly and/or through agents, employees, entities, or persons involved in the extension of credit violated 15 U.S.C. § 1635(b), in that following acceptance of [the Beepots'] notice of rescission, [Chase] did not take the necessary actions with twenty (20) days to reflect the termination of its security interest in the subject property.  There was never any response to Defendant's letter of rescission.

See Second Motion for Relief From Judgment at 2; see also [First] Motion for Relief from Judgment (Doc. 98-12); Response to Second Motion to Amend, Ex. A: Initial Appellant Brief at 4-6.  Accordingly, the Court finds that, like the TILA violations alleged in the Amended Complaint, the proposed TILA claims set forth in the Beepots' Second Motion to Amend are also identical to, or otherwise "essentially connected" to, the arguments raised and rejected in the State Foreclosure Action.  See Zikofsky, 904 So. 2d at 523.  Because, as discussed above, the other prerequisites for the application of res judicata are met, the Beepots' proposed TILA claim is likewise barred by res judicata.

The Beepots also allege that the state court denied them "equal protection of the laws" and their "due process rights."  See Second Motion to Amend, Ex. B at 3-8.  The Court construes these constitutional claims as causes of action brought pursuant to 42 U.S.C. § 1983.  Although unclear, it appears the Beepots intend to assert these constitutional claims against the judges who presided over the state court action.[17]  See Second Motion to

---

[17] To the extent the Beepots intend to bring their equal protection and due process claims against Chase, its employees, or its lawyers, such claims also fail.  To state a prima facie claim under § 1983, the Beepots must allege that the challenged conduct was "under color of state law."  See 42 U.S.C. § 1983.  "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state."  See Thompson v. Hicks, 213 F. App'x 939, 943 (11th Cir. 2007) (quoting Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001)).  The Beepots fail to state a claim for relief under § 1983 against those entities and individuals because they are private actors and the allegations do not present one of the "rare circumstances" where a private party may be considered a state actor for purposes of § 1983.  See Kohler v. Garlets, __ F. App'x __, 2014 WL 4116460, at *2-3 (11th Cir. Aug. 22, 2014) ("[O]ne who has obtained a state court order or judgment is not engaged in state action merely because it used the state court legal process." (internal quotation omitted)).

Amend, Ex. B at 2.  However, the well-established principle of judicial immunity from civil

liability bars these claims.  Harris v. Deveaux, 780 F.2d 911, 914 (11th Cir. 1986); see also

Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); Wahl v. McIver, 773 F.2d 1169, 1172

(11th Cir. 1985).  "'Judges are entitled to absolute judicial immunity from damages for those

acts taken while they are acting in their judicial capacity unless they acted in the clear

absence of all jurisdiction.'"  William B. Cashion Nevada Spendthrift Trust v. Vance, 552 F.

App'x 884, 885-66 (11th Cir. 2014) (quoting Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir.

2000)).  Thus, to determine whether a judge enjoys absolute immunity, courts apply a two-

part test.  Id. at 886.  The first question is whether the judge performed the actions at issue

in his or her judicial capacity.  Id.  If so, courts next determine whether the judge acted in the

clear absence of all jurisdiction.  Id.  A judge is acting within his or her judicial capacity if:

"'(1) the act complained of constituted a normal judicial function; (2) the events occurred in

the judge's chambers or in open court; (3) the controversy involved a case pending before

the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial

capacity.'"  Id. at 886 (quoting Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005)).

Notably, "[a] judge is entitled to immunity 'even when the judge's acts are in error, malicious,

or were in excess of his or her jurisdiction.'"  Id. (quoting Bolin, 225 F.3d at 1239).

The Beepots' allegations against the state court judges pertain entirely to the rulings

of those judges in the State Foreclosure Action and the manner in which the judges

conducted and decided the case.  The Beepots take issue with the state court's purported

decision to deny their motion for rehearing without allowing a hearing on the motion, and with

the state court's reliance on evidence of which the Beepots allegedly did not have proper

notice. Id. at 5-8.  However, setting hearings, considering evidence, and deciding motions are plainly acts within the judicial capacity of a judge.  See Cox v. Mills, 465 F. App'x 885, 887 (11th Cir. 2012) ("[T]he misconduct that [plaintiff] alleged below and now argues on appeal—that the state court judges held hearings, disposed of motions, and made recusal decisions—are all, by their nature, normal judicial functions.").  Moreover, the state circuit court judges were plainly not acting in the "clear absence of all jurisdiction" in resolving the state foreclosure action.  See Fla. Stat. § 26.012.  Accordingly, the Beepots' equal protection and due process claims against the state court judges who presided over the State Foreclosure Action are barred by judicial immunity.  See Drees v. Ferguson, 396 F. App'x 656, 658-59 (11th Cir. 2010).

The Beepots also seek leave to bring state law fraud claims against Chase, its employees, its attorneys, and their law firm based on their conduct in the State Foreclosure Action, as well as in this lawsuit.  However, under Florida law, "'[a]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding.'"  Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co., 470 F.3d 1036, 1042 (11th Cir. 2006) (alteration in original) (quoting Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994)).  Indeed, "[t]he litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin."  Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007).  The Beepots' proposed fraud claims are based entirely on filings and

evidence that Chase Bank and its attorneys submitted in the State Foreclosure Action, as well as in the instant action pending before this Court. See Second Motion to Amend at 8-16.  As such, these actions fall squarely within the conduct protected by Florida's litigation privilege, and the Beepots' claims for fraud are barred. Id.; see also Ponzoli & Wassenberg, P.A. v. Zuckerman, 545 So. 2d 309, 310 (Fla. 3d Dist. Ct. App. 1989).

In addition, the Beepots appear to assert violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. §§ 371 (conspiracy), 372 (conspiracy), and 15 U.S.C. § 1611 (willful violations of TILA).  See Second Motion to Amend, Ex. B at 10, 12, 14, 16.  However, these statutes are criminal statutes and do not provide for civil remedies. See Austin v. Global Connection, 303 F. App'x 750, 753 (11th Cir. 2008) ("The federal wire and mail fraud statutes are criminal statutes which do not provide for civil remedies."); Hom v. Brennan, 840 F. Supp. 2d 576, 582 (E.D.N.Y. 2011) (collecting cases for the proposition that there is no private right of action under 18 U.S.C. § 371); Dunn-Mason v. JP Morgan Chase Bank, N.A., No. 11-cv-13419, 2013 WL 5913684, at *13 (E.D. Mich. Nov. 1, 2013) (explaining that "15 U.S.C. § 1611 provides criminal penalties for certain violations of the Truth in Lending Act . . . and does not provide a private civil right of action.").  Moreover, "the Supreme Court has explained that private citizens lack 'a judicially cognizable interest in the prosecution or nonprosecution of another.'" Austin, 303 F. App'x at 753 (quoting Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 767 n.13 (2005)).  As such, the Beepots cannot bring civil claims under these federal criminal statutes.  Id.

In light of the foregoing, the Court finds that the new claims proposed in the Second Motion to Amend are either barred by res judicata, judicial immunity, or the litigation

privilege, or are improperly premised on criminal statutes.  Therefore, because the proposed second amended complaint would still be subject to dismissal, the Court finds that amendment is futile, and will deny the Second Motion to Amend.  See Cox, 465 F. App'x at 889 ("An amendment is futile where the complaint as amended would still be subject to dismissal.").  The Beepots have amended their pleadings once, and attempted to amend a second time, the Court is not required to give them another opportunity to amend.  See Cornelius, 2014 WL 4747332, at *3-4.  Indeed, despite all the Beepots' filings, the Court finds no indication that, with another opportunity to amend, the Beepots would be able to correct the numerous deficiencies in their Amended Complaint.  Accordingly, the Amended Complaint is due to be dismissed with prejudice.  For the foregoing reasons, it is

**ORDERED:**

1.  Defendant's Motion to Strike Plaintiffs' Amended Certificate of Interested Persons and Corporate Disclosure Statement (Doc. 82); Defendant's Response to and Motion to Strike Plaintiffs' [First Motion for Relief From Proceedings] and Plaintiffs' Motion to Supplement Plaintiffs' [First Motion for Relief From Proceedings] (Doc. 83); Defendant's Motion to Strike Plaintiffs' Motion for Entry of Default/Default with Prejudice (Doc. 93); Plaintiffs' Motion to Strike Defendant's Response in Opposition to Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff (Doc. 95); Plaintiffs' Motion to Strike Defendant's Response in Opposition to Plaintiffs' Motion to Strike Defendant's Response in Opposition to Plaintiffs' Motion to Amend Complaint Signed by Each Plaintiff (Doc. 104); Defendant's Response in Opposition to and Motion

31

to Strike Plaintiffs' Motion to Add Plaintiff(s) and Defendant(s) as Parties in this Action Pursuant to Rule 19 and 20, Federal Rules of Civil Procedure (Doc. 111); and Defendant's Motion to Strike Plaintiffs' Motion for Entry of Default Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure (Doc. 116) are **DENIED**.

2.    Plaintiffs' Motion for Entry of Default/Default With Prejudice (Doc. 85); Plaintiffs' Motion for Entry of Default Judgment (Doc. 109); and Plaintiffs' Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure (Doc. 115) are **DENIED**.

3.    J.P. Morgan Chase National Corporate Services, Inc.'s Renewed Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement and Memorandum of Law (Doc. 73) is **GRANTED** to the extent that J.P. Morgan Chase National Corporate Services, Inc. seeks dismissal of the Beepots' Amended Complaint.

4.    Plaintiffs' Second Motion to Amend the Complaint Signed by Each Plaintiff (Doc. 107) is **DENIED**.

32

5.     This case is **DISMISSED**.  The Clerk of the Court is directed to terminate any

pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 30th day of October, 2014.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Plaintiffs